1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  SDS KOREA CO., LTD., a South Korean
    corporation,
12
                                    Plaintiff,
13
14          vs.
15
16
17  SDS USA, INC., a New Jersey corporation;
    iBEND, LLC., a Montana LLC and SIMON
18  SONG, an individual; and DOES 1-100,
    inclusive,
19
                                    Defendants.

CASE NO. 10 CV 0216 MMA (BGS)

**ORDER:**

**GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION
AND IMPROPER VENUE**

[Doc. No. 14]

**GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' EX PARTE
APPLICATION**

[Doc. No. 35]

20          On May 5, 2010, Defendants SDS USA, Inc., iBEND, LLC and Simon Song (collectively

21  "Defendants"), filed a motion to dismiss Plaintiff SDS Korea Co., Ltd.'s first amended complaint

22  ("FAC") for lack of personal jurisdiction, improper venue, and failure to state a claim, or in the

23  alternative for a more definite statement of its claims. [Doc. No. 14.][1]  Plaintiff opposed

24
25
26          [1] Defendants' motion to dismiss also seeks sanctions against Plaintiff for its allegedly
    unreasonable refusal to amend the FAC to correct certain pleading deficiencies without involving the
27  Court.  According to Defendants, Plaintiff agreed to amend certain claims without requiring
    Defendants to file a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(e), and
    later refused to honor this agreement.  The record, however, does not indicate any bad faith conduct
28  by Plaintiff with respect to amending the FAC.  Accordingly, the Court **DENIES** Defendants' request
    for sanctions.

1    Defendants' motion [Doc. Nos. 19-26], and Defendants submitted a reply, including objections to

2    Plaintiff's evidence [Doc. Nos. 29, 30].   On June 15, the Court took Defendants' motion to

3    dismiss under submission on the papers and without oral argument pursuant to its discretion under

4    Civil Local Rule 7.1(d)(1).  [Doc. No. 31.]  On June 17, Plaintiff submitted a response to

5    Defendants' objections, as well as objections to Defendants' evidence.  [Doc. Nos. 32, 33.]  On

6    June 21, Defendants filed an *ex parte* application requesting the Court strike these "late-filed"

7    documents, or in the alternative, permit Defendants an opportunity to respond.  [Doc. No. 35.]

8    Plaintiff opposed Defendants' *ex parte* request on June 22.  [Doc. No. 22.]  For the reasons set

9    forth below, the Court **GRANTS** Defendants' motion to dismiss, and  **GRANTS IN PART** and

10   **DENIES IN PART** Defendants' *ex parte* application.

11                                   <u>**BACKGROUND**</u>

12          Plaintiff is a South Korean "machine tooling" company involved in, among other things,

13   "pioneering technology for bending and cutting" metallic materials.  [FAC ¶¶4, 9.]  Plaintiff's

14   principal place of business is located in San Diego, California.  [*Id*. at ¶9.]  Defendant SDS USA is

15   a New Jersey corporation with its principal place of business in Norwood, New Jersey.  [*Id*. at ¶5;

16   *Defs.' Mot. to Dismiss*, Doc. No. 14, p.2.]  Individual Defendant Simon Song is the president and

17   CEO of SDS USA.  [Doc. No. 14, p.1.]  Mr. Song is domiciled in New Jersey.  [*Id*. at p.2.]

18   Defendant iBend LLC is a Missouri limited liability company with its principal place of business

19   in Riverside, Missouri.  [*Id*. at p.3; FAC ¶7.]

20          Plaintiff produces an automated system that processes and bends steel rule, which is sold in

21   the United States under the trademark "EasyBender."  [FAC ¶¶10, 15.][2]  iBend sells "automatic

22   bending machines for the die making and sign making industries."  [Doc. No. 14, p.1.]  SDS USA

23   provides "technical support [for] automatic bending machines for the die making and sign making

24   industries."  [*Id*.]  Until 2007, SDS USA provided services for Plaintiff's products sold in the

25   United States.  [FAC ¶34.]  The relationship terminated when SDS USA allegedly breached its

26   contract with Plaintiff by selling its own products that infringed Plaintiff's patents.  [*Id*.]  In

27   _____

28          [2] The United States Patent and Trademark Office ("USPTO") registration number for
     EasyBender® is 3405475.  Plaintiff also owns trademarks for "SDS" and "SDS Korea" with
     registration numbers 3582433 and 3582411, respectively.  [FAC ¶12.]

addition, Plaintiff asserts Defendants are using an infringing domain name—EasyBender.com—to confuse consumers and redirect traffic to iBend's website (www.ibend.net). [*Id*. at ¶18.] Plaintiff alleges Defendants are wrongfully using its EasyBender mark in various locations on iBend's website, including for example, to provide links to proprietary "EasyBender Online Manual(s)." [*Id*. at ¶¶19, 22.] Plaintiff asserts Defendants' unauthorized use of its proprietary manuals online constitutes copyright infringement. [*Id*. at ¶22.]

Accordingly, on January 28, 2010, Plaintiff filed a complaint alleging, *inter alia*, trademark and copyright infringement claims. [Doc. No. 1.] On March 9, 2010, Plaintiff filed its FAC to add patent infringement claims, alleging ten causes of action for: (1) Trademark Infringement (15 U.S.C. § 1114); (2) Unfair Competition under the Lanham Act (15 U.S.C. §§ 1114, 1125(a)); (3) Injunctive Relief under the Lanham Act (15 U.S.C. § 1116); (4) Copyright Infringement; (5) Unfair Competition and Infringement under California Business and Professions Code § 17790; (6) Negligent Interference with Economic Relations; (7) Infringement of '919 Patent; (8) Infringement of '940 Patent; (9) Infringement of '574 Patent; and (10) Infringement of Patent Application 12/111,857. [Doc. No. 7.]

## **LEGAL STANDARD**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Uncontroverted allegations in the complaint must be taken as true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). However, the court may not assume the truth of such allegations if they are contradicted by affidavit. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). In a case such as this, where a court considers only affidavits and discovery materials, the plaintiff need only make a *prima facie* showing of jurisdiction. *Id*. at 1285. Further, "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's]

Case 3:10-cv-00216-MMA-BGS   Document 38   Filed 08/04/10   PageID.808   Page 4 of 22

1  favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

2  (quoting *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

3    There are two independent limitations on a court's power to exercise personal jurisdiction

4  over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional

5  principles of due process. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). California's

6  jurisdictional statute is coextensive with federal due process requirements; therefore, jurisdictional

7  inquiries under state law and federal due process standards merge into one analysis. *Rano v. Sipa*

8  *Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993); *see* Cal. Civ. Proc. Code § 410.10. The exercise of

9  jurisdiction over a non-resident defendant violates the protections created by the due process

10  clause unless the defendant has "minimum contacts" with the forum state so that the exercise of

11  jurisdiction "does not offend traditional notions of fair play and substantial justice." *International*

12  *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be either general or

13  specific. Here, Plaintiff asserts the Court may exercise both general and specific jurisdiction over

14  each Defendant, whereas Defendants contend personal jurisdiction does not exist under either

15  standard. For the reasons set forth below, the Court agrees with Defendants.

16  **DISCUSSION**

17  **I. DEFENDANTS' EX PARTE APPLICATION**

18    As a preliminary matter, the Court considers Defendants' *ex parte* application to strike

19  certain late-filed documents that Plaintiff submitted after Defendants filed extensive objections to

20  Plaintiff's evidence. [Doc. No. 35.][3] On June 17, Plaintiff filed a response to Defendants'

21  objections, as well as objections to Defendants' evidence that was submitted with their moving

22  papers on May 5, 2010. [Doc. Nos. 32, 33.] On June 21, Defendants moved to strike both

23  documents, or in the alternative, allow Defendants time to respond. [Doc. No. 35.] For the

24  reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' *ex*

25  *parte* application.

26  / / /

27

28    [3] Defendants timely filed their objections on June 14 in connection with their reply brief submitted in support of their motion to dismiss. [Doc. No. 30.]

- 4 -

10cv216

1

       **(A)**     **Plaintiff's Objections to Defendants' Evidence [Doc. No. 32]**

2         Defendants filed their motion to dismiss on May 5, 2010, which was scheduled for hearing

3 on June 21, 2010.  [Doc. No. 14.]  Pursuant to Civil Local Rule 7.1(e), Plaintiff's opposition,

4 including any objections to Defendants' evidence submitted on May 5, was due no later than June

5 7.  *See* Civ. L.R. 7.1(e)(2).  Thus, Plaintiff's objections filed ten days later on June 17 are

6 untimely.  Plaintiff asserts the late-filed objections should not be stricken because "Defendants

7 were the ones who decided to commence filing objections to evidence in a 12(b)(6) motion, where

8 the case has not yet commenced and therefore the evidence on both sides cannot be properly be

9 authenticated through discovery."  [Doc. No. 36, p.2.]  The Court disagrees.  On a motion to

10 dismiss for lack of personal jurisdiction, the Court may consider evidence outside the allegations

11 in the complaint.  *See, Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1113-14 (C.D. Cal. 2003).  If

12 Plaintiff desired to object to evidence Defendants submitted in support of their moving papers, it

13 was required to do so when it filed its opposition, no later than June 7.  *See, e.g., Hong v. Right*

14 *Mgmt. Consultants, Inc.*, 2006 U.S. Dist. LEXIS 15252 *53-54 (N.D. Cal.).  Accordingly,

15 Plaintiff's untimely objections to Defendants' evidence [Doc. No. 32] are **STRICKEN**.

16

       **(B)**     **Plaintiff's Response to Defendants' Objections [Doc. No. 33]**

17         Defendants also move to strike Plaintiff's response (filed June 17) to Defendants'

18 objections (filed June 14) on the ground that it is "tantamount to an improper sur-reply."  [Doc.

19 No. 35, p.2.]  Unlike Plaintiff's untimely *objections* to Defendants' evidence, however, which

20 could (and should) have been made in connection with its opposition, Plaintiff did not have an

21 opportunity to respond to Defendants' objections filed with their reply brief.  Because the Court

22 took Defendants' motion to dismiss under submission on June 15, Plaintiff was prevented from

23 responding to Defendants' objections at the hearing.  The Court therefore finds Plaintiff's

24 response, promptly filed within three days of receiving Defendants' objections, reasonable.

25 Accordingly, the Court **DENIES** Defendants' request to strike Plaintiff's response [Doc. No. 33].

26 In addition, the Court **DENIES** Defendants' request to be allowed to file a reply to Plaintiff's

27 responses.  The Court has thoroughly reviewed the parties' respective positions regarding the

28

evidence submitted in connection with Defendants' motion to dismiss, and concludes additional briefing is unnecessary.[4]

## II.      GENERAL JURISDICTION

Before the Court can exercise general jurisdiction over SDS USA, iBend, and Mr. Song, Plaintiff must allege facts sufficient to demonstrate each Defendant has "continuous and systematic business contacts" with California, such that the exercise of jurisdiction is "reasonable and just." *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984). This so called "minimum contacts" standard for establishing general jurisdiction is high, requiring that the defendant's contacts approximate physical presence in the forum. *Bancroft & Masters, Inc. v. Augusta National Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801 (citation omitted). In addition, each defendant's contacts with the forum state must be considered individually, unless the plaintiff establishes the defendant's actions are reasonably attributable to the other defendants. *See Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 750-51 (C.D. Cal. 1995).

Here, Plaintiff suggests the conduct of SDS USA, iBend, and Mr. Song should be considered collectively to determine if Defendants engaged in sufficient minimum contacts with the forum to establish jurisdiction. [*See Pl.'s Opp. to Mot. to Dismiss*, Doc. No. 19, p.4.] In support, Plaintiff offers evidence indicating the two companies "share some corporate officers," advertise together, and share an address in Montana. [*Id*.] However, Plaintiff does not identify any legal theory or authority that would allow the Court to impute the individual Defendant's conduct to one another based on this limited evidence. Thus, the Court declines to impute each Defendant's conduct to the others, and will consider each Defendant's alleged contacts with California separately.

/ / /

---

[4] Except as otherwise stated herein, Defendants' objections are **OVERRULED** for purposes of the pending motion to dismiss.

**(A)    Simon Song**

Mr. Song argues this action should be dismissed because he lacks the requisite minimum contacts with California for this Court to exercise personal jurisdiction over him.  In support of Defendants' motion to dismiss, Mr. Song provides a declaration stating: (i) he is domiciled in New Jersey; (ii) he does not own any real or personal property in California; (iii) he does not own any vehicles registered in California; (iv) he does not have any bank accounts in California; (v) he does not maintain an office, a mailing address, a telephone or fax number, nor an answering service in California; (vi) he does not own or lease any storage or warehouse space in California; (vii) he has not been physically present in California for any purpose related to Plaintiff's allegations; and (viii) he has not purposefully availed himself of any activities directed toward California.  [Doc. No. 14, p.8-9; Declaration of Simon Song ¶¶3-13.]  Plaintiff asserts Mr. Song is subject to personal jurisdiction because he has specifically directed advertisements toward California and solicited business from California residents—albeit, on behalf of SDS USA and iBend.  [Doc. No. 19, p.1, 3.]

In support, Plaintiff provides a declaration from Tony Lim (President of Plaintiff SDS Korea) stating, he "discovered" that Mr. Song exhibited iBend equipment at the "2009 Sign Expo trade show in Las Vegas, Nevada."  [Declaration of Tony Lim ¶¶1, 7.]  Although the trade show did not take place in California, Plaintiff asserts Mr. Song's exhibition of iBend products at the Las Vegas show supports a finding of jurisdiction because it is the only one offered in the western United States, and there were over 2,400 southern California residents in attendance.  [Doc. No. 19, p.13; Lim Decl. ¶7.]  Plaintiff also offers a declaration from Mike Adams (president of Adams Technologies, a distributor for Plaintiff), which states that he witnessed Mr. Song's exhibition at the Las Vegas trade show, and he is aware of several emails and letters from Mr. Song soliciting business from California companies.  [Doc. No. 19, p.13; Declaration of Mike Adams. ¶¶6-10, 12.]

*(i)    Trade Show in Las Vegas, Nevada*

First, Plaintiff does not indicate Mr. Song engaged in any contact with the forum in his individual capacity.  Mr. Adams testifies he witnessed Mr. Song exhibiting *iBend's* products at the trade show in Las Vegas, Nevada.  [Adams Decl. ¶12.]  "[A] person's mere association with a

1  corporation that causes injury in the forum state is not sufficient in itself to permit that forum to

2  assert jurisdiction over the person." *Indiana Plumbing Supply*, 880 F. Supp. at 750.  Thus, Mr.

3  Song's actions at the show, even if directed toward the forum, do not subject *him* to personal

4  jurisdiction.

5          Second, the Court finds that Mr. Song's participation in a single trade show in Las Vegas,

6  Nevada, does not weigh in favor of exercising general jurisdiction over him in California.  Even if

7  the Court accepts as true that Mr. Song participated in infringing product demonstrations at the

8  2009 Las Vegas trade show, which approximately 2,400 California residents attended, this

9  evidence does not demonstrate conduct directed toward California.  The trade show Mr. Song

10 allegedly attended is the "primary trade show in the western United States for the Sign Making

11 industry."  [Adams Decl. ¶12.]  As such, the trade show is presumably open to all members of the

12 public associated with these industries, regardless of residence.  There is no indication Mr. Song

13 participated in soliciting attendees for the trade show, that he sought out California residents

14 during the show, that he interacted with any California residents at the trade show, nor that he sold

15 any equipment to California residents or entered any contracts or obligations with customers in

16 California.  While an exhibitor could reasonably anticipate residents from any of the western

17 states, including California, would attend the event, without more, Mr. Song's involvement in an

18 out-of-state trade show open to the general public does not support exercising jurisdiction over

19 him in California.  *See Kransco Manufacturing, Inc. v. Markwitz*, 656 F.2d 1376, 1377 (9th Cir.

20 1981) (no general jurisdiction where defendant attended trade show in the forum and mailed

21 several letters to forum alleging infringement).

22                    *(ii)      Emails and Letters from Simon Song*

23         Second, the Court finds the remaining contacts Plaintiff identifies—two letters from Mr.

24 Song in his capacity as president of SDS USA—are inadmissible, and otherwise insufficient to

25 demonstrate sufficiently continuous and systematic contacts to support general jurisdiction.

26 Plaintiff provides testimony from Mr. Adams that David Reynolds of US Steel Rule Die Co., Inc.

27 of Cerritos, California forwarded him an email, including a two-page letter attachment, that Mr.

28 / / /

1    Reynolds received from Mr. Song.  [Adams Decl. ¶¶6-7; Exh. A.][5]  Defendants object to this

2    evidence on numerous grounds, including that Mr. Adams's testimony lacks foundation, he lacks

3    personal knowledge and he does not (and cannot) authenticate the email and letter from Mr. Song,

4    attached as Exhibit "A."  The Court agrees, and **SUSTAINS** Defendants' objections to paragraphs

5    six and seven of Mr. Adams's declaration, including the documents attached as Exhibit A.

6    Although Mr. Adams can testify he received an email from David Reynolds, as that matter is

7    within Mr. Adams's personal knowledge, he does not demonstrate he has personal knowledge

8    regarding purchases made by US Steel Rule Die Co., Inc.  Similarly, Mr. Adams has not

9    established he is in a position to authenticate Mr. Song's email and attached unsigned letter.

10        Even if the Court considers the email and attached letter, however, the documents do not

11    support a finding of general jurisdiction over Mr. Song.  At best, the unsigned letter demonstrates

12    Mr. Song may have sent a form letter to a "Valued Customer" in his capacity as president of SDS

13    USA; the letter is written on SDS USA letterhead, and "President" appears below Mr. Song's

14    signature block.  Thus, nothing indicates Mr. Song acted in his individual capacity.  In addition,

15    the letter is not addressed to a California resident or business.  Although Mr. Adams testifies he

16    received the email and attached letter from David Reynolds—who is allegedly associated with a

17    California business—the email from Mr. Reynolds to Mr. Adams merely states, "I am traveling up

18    North but received this email."  [Adams Decl. ¶6; Exh. A.]  Mr. Reynolds does not indicate he

19    _____

20        [5] In paragraph nine of his declaration, Mr. Adams indicates Walt Marrs of Marrs Printing (located in the City of Industry, California), also received the same letter from Mr. Song.  [Adams Decl. ¶9.]  Defendants assert this testimony is inadmissible because it lacks foundation, Mr. Adams
21    does not have personal knowledge regarding the letter Marrs Printing allegedly received, and the testimony is inadmissible hearsay.  The Court agrees, and **SUSTAINS** Defendants' objections to
22    paragraph nine for purposes of this motion only.

23        Similarly, Mr. Adams testifies in paragraph eight that Mr. Song likely sent similar letters to approximately 29 other companies because SDS USA shared the same database with Adams
24    Technology.  [Adams Decl. ¶8.]  Defendants object to this statement on several grounds, including: Mr. Adams lacks personal knowledge that other SDS USA customers received similar letters; Mr.
25    Adams's statements are hearsay because he is offering other customers' statements that they received the letter for the truth of the matter asserted; and Mr. Adams's statement that SDS USA likely sent
26    the letter to approximately 29 companies is speculative.  [Doc. No. 30, p.3-5.]  The Court agrees the testimony in paragraph eight is inadmissible.  Mr. Adams does not identify the "several other
27    customers" that presumably contacted Adams Technologies, how the customers contacted Adams Technologies, who the customers spoke to, what was said during the conversation, or why the letters
28    were not forwarded to Adams Technology.  Accordingly, for purposes of this motion, Defendants' objections are **SUSTAINED**.

10cv216

1    actually received the correspondence from Mr. Song, and the forwarded portion of the original

2    email identifies both the sender and the recipient as "info@iBEND.net." [*Id*.]

3         The second email correspondence allegedly sent by Mr. Song is similarly unhelpful to

4    Plaintiff.  Mr. Adams testifies that, "On May 14, 2009, I received an email forwarded by a leasing

5    agent.  Adams Tech sold a machine in Sacramento, Simon Song sent this forwarded email to try

6    and get the customer to cancel the order and purchase an iBend instead."  [Adams Decl. ¶10; Exh.

7    C.]  In support of Mr. Adams's testimony, Plaintiff offers a string of email correspondence,

8    beginning with an email from Mr. Song on April 29, 2009, addressed to "Whom it may concern."

9    [Adams Decl. ¶10; Exh. C.]  Defendants object to Mr. Adams's testimony and the supporting

10   documents in Exhibit C, in part, on the grounds his testimony lacks foundation, and he does not

11   have personal knowledge regarding the accuracy and authenticity of the email correspondence or

12   Mr. Song's reasons for sending it.  [Doc. No. 30, p.7-8.]  The Court agrees Mr. Adams's statement

13   that, "Simon Song sent this forwarded email to try and get the customer to cancel the order and

14   purchase an iBend instead" is not admissible, and **SUSTAINS** Defendants' objections to this

15   portion of paragraph ten and Exhibit C.  Mr. Adams does not appear as a recipient on the email

16   correspondence, nor does Mr. Adams establish how he knows *why* Mr. Song sent the initial email.

17        Even if admissible, however, the email correspondence in Exhibit C does not demonstrate

18   Mr. Song engaged in contact with the forum.  Although it appears the email was ultimately

19   received by companies that have California offices, this fact does not indicate Mr. Song directed

20   his email to California.  In addition, the correspondence reveals Mr. Song's email was repeatedly

21   forwarded before ending up in the hands of the "leasing agent" who forwarded it to Mr. Adams.

22   Thus, even viewed in the light most favorable to Plaintiff, Mr. Song's email does not provide an

23   adequate basis for personal jurisdiction.

24        Based on the record before the Court, Plaintiff has not satisfied its burden to establish Mr.

25   Song is subject to general jurisdiction in California.  Not only has Plaintiff failed to produce any

26   evidence Mr. Song engaged in contact with the forum in his individual capacity, the only

27   admissible evidence even involving Mr. Song is his alleged attendance at a trade show in Las

28   Vegas, Nevada—outside of California.  It is undisputed Mr. Song is a New Jersey resident, who

does not own or lease any property in California.  Mr. Song does not maintain any telephone, fax, or answering services in California, he does not have a California driver's license, nor does he have a California bank account.  Mr. Song's actions taken on behalf of SDS USA and iBend at the out-of-state trade show do not demonstrate he engaged in continuous or systematic contacts with California.  Accordingly, this Court does not have general jurisdiction over Mr. Song.

**(B)    SDS USA**

SDS USA similarly asserts it "lacks sufficient contacts with California to be subject to this Court's jurisdiction."  [Doc. No. 14, p.9.]  SDS USA is a New Jersey corporation, with its principal place of business in Norwood, New Jersey.  [SDS USA Decl.[6] ¶3.]  SDS USA is not qualified to do business in California, nor does it have any subsidiaries in California.  [*Id*. at ¶4.]  "None of SDS USA's officers or directors reside or are domiciled in California," nor do any of SDS USA's employees reside or conduct business in California.  [*Id*. at ¶¶5-6.]  In addition, SDS has not held any of its board meetings in California, or attended business conferences in California.  [*Id*. at ¶¶ 15.]  SDS USA does not maintain a bank account in California, does not have any vehicles registered in California, and does not maintain any telephone, facsimile, or answering services in California.  [*Id*. at ¶¶7, 10-12.]  SDS USA does not lease any storage space nor own any real property in California.  [*Id*. at ¶¶ 9, 13.]  "SDS USA does not direct any of its advertising specifically toward California residents, nor does it advertise in any publications that are targeted or directed primarily toward California residents."  [*Id*. at 14.]

Plaintiff asserts SDS USA's statements regarding its advertising are untrue because: SDS USA participated in a trade show in Long Beach, California in 2008 [Doc. No. 19, p.5]; SDS USA advertises that it has two tool sharpening locations available to its clients, one of which is "ABL" in San Diego, California [*Id.*; Exh. F]; and SDS USA advertises on Advanced Dye Supplies's website, a company which has an office in Santa Fe Springs, California [Doc. No. 19, p.4-5].

///

---

[6] Declaration of Simon Song in his capacity as president and CEO of SDS USA, Inc.

Plaintiff also alleges SDS USA and iBend provided a quote for a machine to a company located in San Diego, California. [Doc. No. 19, p.2, 5 n.1.][7]

### (i)    2008 Trade Show in Long Beach, California

Mr. Lim testifies that in 2008, one of SDS USA's distributors, Arete Corp., participated in "The Sign Business & Digital Graphics Show" in Long Beach, California, and "SDS USA was displaying their products at this show." [Lim Decl. ¶8.] Mr. Lim spoke to Jeff Brown, of SDS USA, at the booth during the event. [*Id.*] Because this trade show took place in California, the Court finds Mr. Lim's testimony adequately demonstrates SDS USA engaged in contact with the forum through its participation in the Long Beach show. Without more, however, SDS USA's presence at a single event does not establish sufficient systematic and continuous contacts to create general jurisdiction. *See Kransco Manufacturing*, 656 F.2d at 1377.

### (ii)    Quote to California Business

With respect to the alleged quote SDS USA and iBend provided to Sign Graphix in San Diego, California, Plaintiff provides testimony from Mr. Adams stating, "I have discovered that Jolly Limqueco of SIGN GRAPHIX received a quote for an iBEND machine from SDS USA in July 2009." [Adams Decl. ¶16.] Defendants object to this testimony on the grounds that it lacks foundation, Mr. Adams does not have personal knowledge regarding the quote, and it constitutes inadmissible hearsay. [Doc. No. 30, p.15.] The Court agrees, and **SUSTAINS** Defendants' objections for purposes of this motion only. *See* Fed. R. Evid. 602. Mr. Adams does not demonstrate the requisite personal knowledge required to testify that Sign Graphix received a quote from the Defendants.

### (iii)    Website Advertisement & Referral for Services

SDS USA's alleged marketing activities with two different companies that maintain California offices are likewise unhelpful to Plaintiff. Mr. Lim testifies, "I have discovered that SDS USA advertises on the website for Advanced Die Supplies . . . Advanced Die Supplies['s]

---

[7] Plaintiff also relies on the two emails Mr. Song allegedly sent on behalf of SDS USA to solicit business from California companies. [*Id.* at p.5.] However, because the Court sustained Defendants' objections to these emails and related testimony, it will not consider the emails in its jurisdictional analysis.

1   west coast office is located in Santa Fe Springs, California." [Doc. No. 19, p.4-5; Lim Decl. ¶10.]

2   Plaintiff asserts this advertisement is "highly relevant to establish that SDS USA does business in

3   California with Advanced Die Supplies." [Doc. No. 33, p.10.] While SDS USA's logo appears on

4   the website, the logo does not link to information about SDS USA, it does not invite people to

5   contact SDS USA, and it does not provide an opportunity to interact with SDS USA in any way.

6   In addition, that Advanced Die Supplies has a California location is inapposite. Plaintiff provides

7   no evidence SDS USA has had any contact with the California office, nor that any contacts with

8   potential customers in California arose from this advertisement.

9        Similarly, Mr. Lim testifies that SDS USA refers customers who need tools sharpened to

10  SDS USA's New Jersey location, or to a company named ABL, Inc. in San Diego, California,

11  depending on the customer's location. [Doc. No. 19, p.5; Lim Decl. ¶¶12-14.] Mr. Lim states, in

12  relevant part, "it is my understanding that in some instances a customer who has purchased an

13  EasyBender sends [a] purchase order to SDS USA for the sharpening which is done in San Diego

14  by ABL, Inc. It is my understanding that SDS USA then pays ABL, Inc. for the service." [Lim

15  Decl. ¶13.] Defendants object to these statements on the grounds that the testimony lacks

16  foundation and Mr. Lim lacks personal knowledge. [Doc. No. 30, p.27.] For the following

17  reasons, the Court **SUSTAINS** Defendants' objections.

18       Mr. Lim is not affiliated with SDS USA or ABL, Inc.—he is the president of Plaintiff SDS

19  Korea. [Lim Decl. ¶1.] Mr. Lim's declaration does not establish how he has personal knowledge

20  regarding SDS USA's relationship (if any) with ABL, Inc. Nor does he indicate how he has

21  personal knowledge of SDS USA's alleged practices for coordinating the sharpening services

22  provided by ABL, Inc.[8] In the absence of evidence to establish Mr. Lim has personal knowledge

23  regarding these matters, his testimony is inadmissible. Fed. R. Evid. 602.

24       Accordingly, in the absence of admissible evidence beyond SDS USA's isolated

25  attendance at the Long Beach trade show in 2008, the Court finds SDS USA has not engaged in

26  _____

27     [8] For similar reasons, Exhibit "G" to Mr. Lim's declaration lacks foundation and is inadmissible. Although Mr. Lim declares, "I have knowledge that SDS USA has corresponded with

28  ABL, Inc. discussing making attempts to lure service customers away from SDS Korea's distributor Adams Technology" [Lim Decl. ¶14], he fails to authenticate the supporting email correspondence in Exhibit G, and Mr. Lim is not an identified recipient on any of the correspondence.

10cv216

contact with California that can reasonably be considered equivalent to physical presence in the forum. *See Bancroft & Masters*, 223 F.3d at 1086. Thus, this Court does not have general jurisdiction over SDS USA.

**(C)    iBend, LLC**

iBend also moves to dismiss Plaintiff's complaint for lack of jurisdiction because it has not engaged in sufficient contacts with California to establish personal jurisdiction. iBend is a Missouri limited liability company with its principal place of business in Riverside, Missouri. [Declaration of Jay Joo ¶3.][9] None of iBend's employees, officers or directors are domiciled in California, nor do they conduct business for iBend or attend meetings or seminars on its behalf in California. [*Id*. at ¶¶4-6, 15.] iBend does not maintain any office space in California, nor a mailing address, telephone or facsimile number in California. [*Id*. at ¶¶11-12.] In addition, iBend does not maintain any bank accounts in California, does not own any vehicles registered in California, and does not own or lease any property in California. [*Id*. at ¶¶7, 8-10, 12-13.] Nor does iBend direct any advertising specifically toward California. [*Id*. at ¶14.]

Plaintiff asserts Mr. Joo's testimony is untruthful because Mr. Song exhibited iBend's equipment at the trade show in Las Vegas, which was attended by over two thousand California residents, and for the past two years iBend has advertised in a monthly trade publication, *Cutting Edge*, which has a "large subscription base in California." [Doc. No. 19, p.4, 12; Adams Decl. ¶¶12-13; Exh. D.] In addition, Plaintiff asserts iBend entered at least one contract with a California business, and that iBend currently advertises on Advanced Dye Supplies's website, which has an office in Santa Fe Springs, California. [Doc. No. 19, p.4-5.][10]

---

[9] Jay Joo is the president and sole member of iBend, LLC. [Joo Decl. ¶1.]

[10] Plaintiff also refers to an "attempted sale" where iBend allegedly attempted to convince a customer in Sacramento, California to cancel its order with Adams Technology and purchase a machine from iBend instead. [Adams Decl. ¶10.] Because the Court previously sustained Defendants' objections to paragraph ten of Mr. Adams's testimony and the corresponding emails in Exhibit "C" thereto, the Court does not consider this alleged contact in its jurisdictional analysis.

The Court also notes the FAC alleges—without elaboration—that iBend advertises infringing products on its website, http://ibend.net [FAC ¶39], but Plaintiff does not raise the iBend website in its opposition to Defendants' motion to dismiss. However, without more, a passive informational website that has not resulted in any identifiable contacts or sales with California residents does not

1

                   *(i)        Trade Show in Las Vegas, Nevada*

2          Mr. Adams testifies he witnessed Mr. Song exhibiting iBend's equipment at the 2009 trade

3 show in Las Vegas, Nevada.  [Adams Decl. ¶12.]  Plaintiff argues that because over 2,400

4 California residents attended the Las Vegas trade show, iBend purposefully directed its conduct

5 toward California.  For the reasons previously set forth above in section II(A)(i), iBend's presence

6 at the Las Vegas trade show, through Mr. Song, does not demonstrate contact with California.

7

                   *(ii)       Trade Publication*

8          Plaintiff argues iBend actively directs advertisements toward the forum because the trade

9 publication, *Cutting Edge*, has a "large subscription based in California."  [Adams Decl. ¶13.]

10 However, there is nothing in the record to support this statement.  Plaintiff asserts the "distribution

11 list for the Cutting Edge magazine is posted on the internet and a listing of the Southern California

12 recipients was attached as Exhibit "D" to Plaintiff's Notice of Lodgement."  [Doc. No. 33, p.9.]

13 But Exhibit D, which consists of excerpts from *Cutting Edge*, including copies of iBend's

14 advertisements in October 2009 and February 2010, do not indicate any significant connection to

15 California.[11]  [Adams Decl. ¶13; Exh. D.]  Accordingly, iBend's advertisements in *Cutting Edge*

16 do not establish contact with the forum.

17

                   *(iii)     Sale to California Business*

18          Plaintiff also contends iBend engaged in contact with California because it has identified at

19 least one allegedly infringing device sold to a California business.  [Doc. No. 19, p.12.]  iBend

20 asserts the identified device "was sold by a non-party distributor in North Hollywood, California."

21 [Doc. No. 14, p.3; Nielson Decl. ¶11.]  Plaintiff interprets this statement as an admission that

22 iBend "entered into at least one contract with a California business."  [Doc. No. 19, p.12.]  Based

23 on the record, however, iBend merely acknowledges that a third party distributor—not

24 iBend—sold the device identified by Plaintiff.  Without more, a single sale by an unidentified

25 distributor to a California business does not establish that iBend had contact with the forum.

26 create personal jurisdiction.  *See CollegeSource, Inc. v. AcademyOne, Inc.*, 2009 U.S. Dist. LEXIS

27 *11-12, 15-16 (S.D. Cal.) (citing *Bancroft*, 223 F.3d at 1082; *Cybersell, Inc. v. Cybersell, Inc.*, 130

28 F.3d 414 (9th Cir. 1997)).

                  [11] The Court notes several portions of Exhibit D are illegible.

1   Accordingly, because iBend is not registered to do business in California, has no employees in

2   California, and has no assets in California, the Court finds the contacts alleged by Plaintiff are not

3   sufficient to support general jurisdiction over iBend.

4   **III.    SPECIFIC JURISDICTION**

5        "Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction

6   if the defendant has sufficient contacts with the forum state in relation to the cause[s] of action."

7   *Sher*, 911 F.2d at 1361 (citing *Data Disc, Inc.*, 557 F.2d at 1286).  Specific jurisdiction is analyzed

8   using a three-prong test: (1) the non-resident defendant must purposefully direct its activities

9   towards, or consummate some transaction with, the forum or a resident thereof, or perform some

10   act by which it purposefully avails itself of the privilege of conducting activities in the forum,

11   thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises

12   out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction

13   must be reasonable.  *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  Each of these conditions

14   is required to assert jurisdiction.  *Insurance Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266,

15   1270 (9th Cir. 1981).

16        Plaintiffs may satisfy the first prong in the analysis by demonstrating that the defendant

17   "purposefully directed" its conduct toward the forum state, or "purposefully availed" itself of the

18   privilege of doing business in the forum.  *Schwarzenegger*, 374 F.3d at 802.  Courts typically

19   utilize the purposefully directed standard in tort cases, whereas the purposeful availment test is

20   most useful for contract-based claims.  *Id.*

21        To establish the defendant "purposefully directed" its conduct toward the forum, the

22   plaintiff usually produces "evidence of the defendant's actions outside the forum state that are

23   directed at the forum, such as the distribution in the forum state of goods originating elsewhere."

24   *Id.* at 803.  Conversely, the "purposeful availment" inquiry usually involves evidence of the

25   defendant's actions in the forum to determine whether the defendant should reasonably anticipate

26   being haled into the forum state court based on its contacts.  *Schwarzenegger*, 374 F.3d at 802;

27   *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  The purposeful availment

28

1    test is met where "the defendant has taken deliberate action within the forum state or if he has

2    created continuing obligations to forum residents."  *Ballard*, 65 F.3d at 1498.

3        The second prong in the analysis requires that the claim arise out of or result from the

4    defendant's forum-related activities.  A claim arises out of a defendant's conduct if the claim

5    would not have arisen "but for" the defendant's forum-related contacts.  *Panavision Int'l v. L.P.v.*

6    *Toeppa*, 141 F.3d 1316, 1322 (9th Cir. 1998).

7        If the plaintiff satisfies the first two factors, the defendant bears the burden of overcoming

8    a presumption that jurisdiction is reasonable, by presenting a compelling case that specific

9    jurisdiction would be unreasonable.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985);

10   *Haisten v. Grass Valley Medical Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).  Seven factors

11   are considered in assessing whether the exercise of jurisdiction over a non-resident defendant is

12   reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs;

13   (2) the burden on the defendant of defending in the forum; (3) conflicts of law between the forum

14   state and the defendant's home jurisdiction; (4) the forum state's interest in adjudicating the

15   dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in

16   convenient and effective relief; and (7) the existence of an alternative forum.  *Caruth v.*

17   *International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).

18       **(A)    Simon Song**

19       The only admissible evidence in the record regarding Mr. Song's contact with California

20   involves his presence at the 2009 trade show in Las Vegas, Nevada.  But, as previously discussed,

21   Plaintiff has not demonstrated Mr. Song acted in his individual capacity at the show, and the Court

22   may not assert jurisdiction over him based only on his association with iBend.  Accordingly, this

23   Court lacks specific jurisdiction over Mr. Song.

24       **(B)    SDS USA**

25       Plaintiff asserts this Court has specific personal jurisdiction over SDS USA, because the

26   company attended a trade show in 2008 in Long Beach, California, and it currently advertises on

27

28   / / /

1    the website for Advanced Die Supplies, which has an office in Santa Fe Springs, California.[12]   As

2    Plaintiff acknowledges, however, it is not merely the number of contacts the defendants have with

3    California, it is "the quality and nature of those contacts which is important for establishing

4    jurisdiction." [Doc. No. 19, p.7-8; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

5    (1985).]

6         Plaintiff asserts SDS USA directly solicited business from California through its

7    advertisement on Advanced Die Supplies's website. [Doc. No. 19, p.13.] The Court disagrees.

8    First, the record does not contain any evidence SDS USA's advertisement was deliberately

9    directed toward the forum. Although Advanced Die Supplies has a California location, SDS

10   USA's placement of its logo on the company's website, which is accessible nationwide, does not

11   establish SDS USA was specifically seeking business from California. SDS USA's mere presence

12   on a website that is accessible nationwide does establish personal jurisdiction in California. *See,*

13   *e.g., CollegeSource*, 2009 U.S. Dist. LEXIS at *15 (citing *Cybersell*, 130 F.3d at 419). Second,

14   Plaintiff has not demonstrated SDS USA purposefully availed itself of the benefits of conducting

15   business in the forum through the placement of its logo on Advanced Die Supplies's website. The

16   record contains no evidence the ad resulted in any interaction with potential customers in the

17   forum, nor any sales to California residents or businesses.

18         Plaintiff's reliance on iBend's presence at the Long Beach trade show is similarly

19   unavailing. According to Mr. Lim's testimony, SDS USA displayed its products at one of its

20   distributor's booths at the Long Beach show; SDS USA did not purchase its own booth. [Lim

21   Decl. ¶8.] Plaintiff does not offer evidence that SDS USA sold any products at the show to

22   California residents or businesses, or that SDS USA otherwise entered any negotiations,

23   agreements, or contracts with any California customers. Thus, the location of the trade show,

24   which SDS USA had no control over, is the only evidence indicating any contact with the forum.

25         In addition, even assuming SDS USA's participation in the Long Beach trade show is

26   sufficient to satisfy the first prong in the specific jurisdiction analysis, Plaintiff has not

27

28         [12] The Court does not consider evidence of the other alleged contacts previously deemed
     inadmissible in section II(B), *supra*.

demonstrated its claims arise out of or relate to SDS USA's exhibition at the Long Beach show. "To satisfy th[e] second prong, the Ninth Circuit requires a plaintiff to show that [it] would not have suffered an injury "but for" the defendant's forum-related conduct." *CollegeSource, Inc.*, 2009 U.S. Dist. LEXIS at *18-19 (citing *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007)). Here, Plaintiff does not assert any of its alleged injuries resulted from SDS USA's participation in the Long Beach trade show. Notably, although Mr. Lim testifies SDS USA displayed its products at the show, he does not specify whether the products displayed were those that allegedly infringe Plaintiff's patents. Accordingly, Plaintiff has not satisfied the second prong in the specific jurisdiction analysis because Plaintiff's claims do not arise out of SDS USA's attendance at the show. SDS USA is not subject to specific personal jurisdiction in California.

**(C)    iBend, LLC**

Finally, Plaintiff asserts iBend's exhibition at the Las Vegas trade show, its monthly advertisements in the trade publication, *Cutting Edge*, and one sale involving an allegedly infringing iBend machine in northern California establish specific jurisdiction over iBend. The Court disagrees.

As previously discussed, Mr. Adams testified he saw Mr. Song exhibiting "iBend equipment in the ARETE booth" at the trade show in Las Vegas, Nevada. [Adams Decl. ¶12.] Notably, this trade show took place *outside* of California. Although there were California residents in attendance at the trade show, there is no indication the potential access to California's residents motivated iBend's participation. In addition, Plaintiff does not assert iBend interacted with any California residents or businesses at the trade show, sold any products to California attendees, nor entered any negotiations or other agreements involving California consumers. The Ninth Circuit has held, "that a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment *if* that solicitation results in contract negotiations or the transaction of business." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) (emphasis added) (citation omitted). Thus, iBend's mere presence at a trade show in Las Vegas, Nevada does not establish it purposefully directed any conduct toward California.

1    Similarly, Plaintiff asserts iBend specifically directed marketing activities toward the

2 forum by placing monthly ads in *Cutting Edge* for the past two years.  Because the record contains

3 no evidence indicating where the publication is distributed, the existence of iBend's

4 advertisements in *Cutting Edge* do not establish any contact with California.  Lastly, Plaintiff

5 identifies one sale of an allegedly infringing iBend machine to a business in San Francisco,

6 California.  While Plaintiff asserts iBend admits it entered this sales contract in California, the

7 evidence demonstrates that an unidentified third-party distributor actually sold the iBend machine.

8 Without more, the Court concludes the sale of an iBend machine by an unnamed third party does

9 not establish iBend purposefully availed itself to the benefits and protections of California's laws

10 such that it could reasonably be expected to be haled into California's courts.  Accordingly, the

11 conduct identified by Plaintiff does not demonstrate iBend is subject to specific jurisdiction.

12  **IV.    VENUE**

13    Even if Plaintiff had produced admissible evidence of sufficient contacts with California to

14 exercise personal jurisdiction over any of the Defendants, venue in the Southern District is not

15 proper.  Plaintiff asserts it properly initiated this action in San Diego under 28 U.S.C. § 1391(b)(2)

16 because a "substantial part of the events giv[ing] rise to the claim occurred" in this district.  [Doc.

17 No. 19, p.14.]  The record, however, belies Plaintiff's position.

18    Setting aside the admissibility problems with Plaintiff's evidence, none of the alleged

19 events that give rise to Plaintiff's claims occurred in the Southern District of California.  Indeed,

20 the only link Plaintiff provides to the Southern District is an alleged quote from iBend to a San

21 Diego company (Sign Graphix).  Yet Plaintiff does not even allege the quote was given for an

22 infringing machine.  Accordingly, even if Plaintiff's allegations are taken as true, which they need

23 not be on a motion to dismiss for improper venue,[13] the facts before the Court do not demonstrate

24 that any events, let alone a substantial part of the events, giving rise to Plaintiff's claims occurred

25

26 ///

27

28

---

[13] *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

- 20 -

1   in the Southern District.[14]  Because the Southern District of California is not a proper venue for

2   Plaintiff's claims, its complaint is subject to dismissal.

3       Although the Court agrees with Plaintiff that transferring the case to an appropriate venue

4   is often preferable to dismissing the action, Plaintiff has not identified an appropriate venue for

5   transfer.  Similarly, Defendants did not identify a potentially acceptable venue until their reply

6   brief, which identifies the Eastern District of New York.  Because the record is devoid of any

7   reference to parties or events in New York, the Court does not find New York to be an acceptable

8   venue for transfer.  Accordingly, dismissal is appropriate.

9   **V.    PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY**

10      Lastly, Plaintiff requests that it be granted an opportunity to conduct jurisdictional

11  discovery if the Court finds the existing evidence does not demonstrate an adequate basis for

12  personal jurisdiction over the Defendants.  [Doc. No. 19, p.18-19.]  "Courts are afforded a

13  significant amount of leeway in deciding whether parties may conduct discovery relating to

14  jurisdictional issues while a motion to dismiss is pending.  It is clear that the question of whether

15  to allow discovery is generally within the discretion of the trial judge.  However, where *pertinent*

16  facts bearing on the question of jurisdiction are in dispute, discovery should be allowed."  *Orchid*

17  *Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) (emphasis added)

18  (internal marks and citations omitted).

19      Here, Plaintiff has not shown that pertinent facts bearing on jurisdiction are in dispute.

20  Plaintiff asserts there are inconsistencies between Mr. Song's and Mr. Joo's declarations that

21  warrant discovery, but fails to identify a single discrepancy between the two declarations.

22  Similarly, Plaintiff unsuccessfully attempts to contradict Defendants' assertions that they have not

23  engaged in advertising activities specifically directed toward California.  As discussed more fully

24  above, Plaintiff is unable to identify any advertising that specifically targeted the forum.  Sheer

25  speculation and conclusory statements regarding Defendants' alleged activities are insufficient to

26

27      [14] For the same reasons, venue is not proper in San Diego under the patent venue statute, 28
28  U.S.C. § 1400(b), which provides: "Any civil action for patent infringement may be brought in the
    judicial district where the defendant resides, or where the defendant has committed acts of
    infringement *and* has a regular and established place of business." (emphasis added).

10cv216

satisfy the showing require by *Orchid Biosciences.*  Thus, in the absence of any credible evidence that pertinent facts are in dispute, the Court **DENIES** Plaintiff's request for jurisdictional discovery.[15]

**CONCLUSION**

Because the Court lacks personal jurisdiction over each of the Defendants, and none of the events giving rise to Plaintiff's claims occurred in the Southern District of California, the Court **DISMISSES** Plaintiff's complaint for lack of jurisdiction and improper venue.  The Clerk of Court is instructed to terminate the case file.

**IT IS SO ORDERED.**

DATED:  August 4, 2010

Hon. Michael M. Anello
United States District Judge

---

[15] Magistrate Judge McCurine recently permitted briefing on Plaintiff's request for jurisdictional discovery, and denied the request on June 11, 2010.  [Doc. No. 28; *see also* Doc. No. 29-1, Exhs. 10-13.]

10cv216